# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| CHARLES BERNARD PARKE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BUTTE, et al.,<br><br>Defendants. | Cause No. CV 10-00042-BU-SEH-RKS<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DISMISS CASE |

This matter is pending on Defendants' Motions for Summary Judgment (C.D. 22, 35), Plaintiff's Motion for Discovery (C.D. 41) and Defendants' Motion to Strike Plaintiff's Rebuttal to Defendants' Reply Brief in Support of Summary Judgment. (C.D. 46). Mr. Parke alleges Defendants utilized excessive force and conducted an unlawful seizure of his person in violation of his federal constitutional rights thereby subjecting Defendants to liability under 42 U.S.C. § 1983.

After a thorough review of the record, it is recommended Defendants' Motions for Summary Judgment be granted. Plaintiff's Motion for Discovery and Defendants' Motion to Strike will be denied.

## I.    MOTION FOR DISCOVERY

On June 20, 2011, the Court received a letter written to Magistrate Judge Lynch.  As the letter appeared to be a request for discovery in this case, it was filed as a motion for discovery.  (C.D. 41).  The letter sought a "judgment order," a "dispatch log," officers' badge numbers, and "a registry to officers on September 11, 2008."  No further description or definition of these items was provided.

Mr. Parke alleged four officers tried to arrest him on September 11, 2008 while he was in Judge Krueger's courtroom but Judge Krueger recalled all outstanding warrants for his arrest on that day.  Therefore, Mr. Parke argues, a couple of the officers involved in the incident at issue herein knew there were no warrants for his arrest on October 23, 2008.  (C.D. 41).

There are numerous problems with Mr. Parke's filing.  First, it was done in the form of a letter.  It is inappropriate to communicate with the Court through informal communications such as letters.  If Mr. Parke needs something from the Court he must file it as a motion.

Secondly, even if the letter is construed as a discovery motion, it must be denied as untimely.  Discovery ended in this case on April 11, 2011 and all motions were due by May 13, 2011.  <u>See</u> Revised Scheduling Order (C.D. 17).

Defendants' response to Mr. Parke's filing indicates that Mr. Parke did not conduct any discovery until he sent this letter on June 15, 2011, two months after the discovery deadline. (C.D. 42, p. 4). Mr. Parke failed to comply with the Court's Scheduling Order and as such, what has been construed as a motion for discovery will be denied.

## II.     MOTION TO STRIKE

On July 12, 2011, Defendants Heard, Williams, Maloughney, Staton, T. Berger, C. Berger, Honer, Rauch, and Tracy moved to strike Mr. Parke's Rebuttal to Defendants' Reply Brief in Support of Summary Judgment (C.D. 44) and Mr. Parke's purported Motion for Discovery (C.D. 41) and supporting briefs. Defendants argue that these documents are not recognized or allowed by the Federal Rules of Civil Procedure, they are untimely, and ignore the deadlines established by the Revised Scheduling Order of January 13, 2011.

The rebuttal and motion for discovery are technically in violation of the Local Rules and the Federal Rules of Civil Procedure, but both provide greater insight into Mr. Parke's arguments, which are less than clear. There is no prejudice to Defendants in considering these documents since the motion for discovery will be denied and Defendants' Motions for Summary Judgment recommended to be

granted.  Accordingly, the motion will be denied as moot.

## III.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if they can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[1]  That is, where the documentary evidence permits only one conclusion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).

According to the newly amended Rule 56 of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Thus, the party seeking summary judgment bears the initial burden of

---

[1]Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

informing the Court of the basis of its motion and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, it believes demonstrate the absence of any genuine issue

of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a defendant files a properly supported motion for summary judgment,

a plaintiff may not rest on their allegations alone to get to a jury without "any

significant probative evidence tending to support the complaint."  Anderson, 477

U.S. at 249 quoting First National Bank of Arizona v. Cities Service Co., 391 U.S.

253, 88 S.Ct. 1575 (1968).  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  Anderson, 477 U.S.

at 249-250 (internal citations omitted).

> The mere existence of a scintilla of evidence in support of the [non-
> moving party's] position will be insufficient; there must be evidence
> on which the jury could reasonably find for the [non-moving party].
> The judge's inquiry, therefore, unavoidably asks whether reasonable
> jurors could find by a preponderance of the evidence that the plaintiff
> is entitled to a verdict.

Anderson, 477 U.S. at 252.  "[I]f the factual context makes the non-moving party's

claim implausible, that party must come forward with more persuasive evidence

than would otherwise be necessary to show that there is a genuine issue for trial."

California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d

1466, 1468 (9th Cir. 1987). Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. <u>Anderson</u>, 477 U.S. at 248. At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

In the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); <u>Baker v. McNeil Island Corrections Ctr.</u>, 859 F.2d 124, 127 (9th Cir. 1988).

## IV. UNDISPUTED FACTS[2]

On October 23, 2008, Detective Rhonda Staton of the Butte Silver-Bow Law Enforcement Department was given information that Mr. Parke may be at a

---

[2]Local Rule 56.1(b) requires any party opposing a motion for summary judgment to file a Statement of Genuine Issues. Mr. Parke did not file a Statement of Genuine Issues. Accordingly, unless disputed by the record, the Court has utilized Defendants' Statement of Undisputed Facts in preparing this section.

residence at 703 South Montana Street in the City of Butte.  (C.D. 24:  SMF ¶ 7

citing Staton Aff. at 2, ¶ 4).  A bench warrant was issued for Mr. Parke's arrest on

September 12 or 17 (the date is illegible) stating Mr. Parke violated a condition of

bond that he remain at MCDC for chemical dependency treatment.  (C.D. 29-1, p.

1).[3]

On October 23, 2008, Sergeant Heard, Detective Maloughney, Detective

Staton, Officer Tim Berger, and Officer Chris Berger met to discuss and formulate

a plan to attempt to serve this felony arrest warrant on Mr. Parke.  (C.D. 24:  SMF

¶ 9 citing Staton Aff. at 2, ¶ 6; Heard Aff. at 2, ¶ 3; C. Berger Aff. at 2, ¶ 6;

Maloughney Aff. at 2, ¶ 6; T. Berger Aff. at 2, ¶ 4).  Once at the location, the

officers observed Mr. Parke exit the residence and walk toward their location.

(C.D. 24:  SMF ¶ 11 citing Staton Aff. at 2, ¶ 8; Heard Aff. at 2, ¶ 5).  Sergeant

Heard and Detective Staton made contact with Mr. Parke, identified themselves,

and commanded him to stop.  (C.D. 24:  SMF ¶ 12 citing Staton Aff. at 3, ¶ 10;

Heard Aff. at 2, ¶ 6).  Mr. Parke disobeyed the officers' verbal commands and

began running towards Aluminum Street where Detective Maloughney, Officer

Tim Berger, and Officer Chris Berger were positioned.  (C.D. 24:  SMF ¶ 13 citing

---

[3]Although not defined, presumably, MCDC refers to the Montana Chemical
Dependency Center located in Butte, Montana.

Staton Aff. at 3, ¶ 11; Heard Aff. at 2, ¶ 7; Maloughney Aff. at 2, ¶ 7; T. Berger Aff. at 2, ¶ 5; C. Berger Aff. at 2, ¶ 7).

Sergeant Heard and Officer Chris Berger pursued Mr. Parke on foot.  (C.D. 24:  SMF ¶ 15 citing  Heard Aff. at 2, ¶ 7; C. Berger Aff. at 3, ¶ 9).  Mr. Parke continued to run onto Aluminum Street and then back toward Montana Street with Sergeant Heard and Officer Chris Berger in pursuit.  (C.D. 24:  SMF ¶ 16 citing Heard Aff. at 3, ¶¶ 8-9; C. Berger Aff. at 3, ¶ 9).

There was heavy motor vehicle traffic on Montana Street while Sergeant Heard and Officer Chris Berger were in foot pursuit of Mr. Parke.  (C.D. 24:  SMF ¶ 17 citing Heard Aff. at 3, ¶ 14, p. 4, ¶ 22; C. Berger Aff. at 4, ¶ 19; Staton Aff. at 3, ¶ 14).  During the pursuit, Sergeant Heard deployed his taser in the dart-mode, hitting Mr. Parke with one probe.  Mr. Parke continued to run from the officers.  (C.D. 24:  SMF ¶ 18 citing Heard Aff. at 3, ¶ 11; C. Berger Aff. at 3, ¶ 11).  Officer Chris Berger also deployed his taser in the dart-mode at Mr. Parke.  Although Mr. Parke yelled as if he had been struck by the taser probes, he continued running.  (C.D. 24:  SMF ¶ 19 citing C. Berger Aff. at 3, ¶ 12; Heard Aff. at 3, ¶ 12).  Officer Chris Berger was eventually able to catch up to Mr. Parke, grab his clothing, and take him to the ground.  (C.D. 24:  SMF ¶ 20 citing C. Berger Aff. at 3, ¶ 13; Heard

Aff. at 3, ¶ 13).

As Mr. Parke was going to the ground, he threw a cloth Crown Royal bag onto the nearby sidewalk.  (C.D. 24:  SMF ¶ 21 citing Staton Aff. at 4, ¶ 18; Heard Aff. at 3, ¶ 15).  While Mr. Parke was on the ground, he continued to physically resist the efforts of Sergeant Heard and Officer Chris Berger to take him into custody and place handcuffs on him.  (C.D. 24:  SMF ¶ 22 citing  Staton Aff. at 4, ¶ 20; Heard Aff. at 3, ¶16; C. Berger Aff. at 3, ¶ 14).  Mr. Parke ignored the verbal commands of Sergeant Heard and Officer Chris Berger to stop resisting and allow them to handcuff him.  (C.D. 24:  SMF ¶ 23 citing Staton Aff. at 4, ¶¶ 19-20; Heard Aff. at 3, ¶ 16).  During the struggle on the ground, Officer Chris Berger deployed his taser in a drive-stun mode in an attempt to gain physical control over Mr. Parke and place him in handcuffs.  (C.D. 24:  SMF ¶ 24 citing  C. Berger Aff. at 3, ¶ 15; Heard Aff. at 4, ¶ 17).[4]

---

[4]The parties have not defined the difference between the dart-mode and the drive-stun mode.  For purposes of this Order, the Court will utilize the definitions of these terms set forth in Brooks v. City of Seattle, 599 F.3d 1018 (9th Cir.2010), rehr'g en banc granted by 623 F.3d 911 (9th Cir. 2010).  Even though Brooks is pending en banc the Ninth Circuit determined after the granting of rehearing that the two modes had been "properly distinguished" in the Brooks decision.  See Bryan v. MacPherson, 630 F.3d 805, 810 n.1 (9th Cir. 2010).  According to Brooks, the taser in the drive-stun mode involves touching the taser to the body causing temporary, localized pain only.  "[A]pplying the taser in the dart-mode (wherein darts are shot at the suspect from some distance) achieves greater distance

With the assistance of Detective Maloughney, Officer Chris Berger and

Sergeant Heard were finally able to gain physical control over Mr. Parke and place

him in handcuffs. (C.D. 24: SMF ¶ 25 citing Heard Aff. at 4 , ¶ 18; C. Berger Aff.

at 3, ¶ 16; MaloughneyAff. at 3, ¶ 13).

After Mr. Parke's arrest, a pat down search of his person was conducted. It

revealed a knife, a clear plastic baggy containing a powdery substance believed to

be methamphetamine, and clear plastic baggies containing a green leafy substance

believed to be marijuana. The Crown Royal bag thrown by Mr. Parke onto the

nearby sidewalk at the conclusion of the foot pursuit contained a large of amount

of suspected illegal drugs. (C.D. 24: SMF ¶ 26 citing Staton Aff. at 4, ¶ 22;

Maloughney Aff. at 3, ¶ 14).

After Mr. Parke was in custody, Sergeant Heard summoned medical

assistance. Mr. Parke was transported to St. James Hospital. (C.D. 24: SMF ¶ 27

citing Heard Aff. at 4, ¶ 20; Maloughney Aff. at 3, ¶ 16). Mr. Parke remained in

the hospital until October 31, 2008.

Mr. Parke was charged with felony criminal offenses, including possession

of dangerous drugs with intent to sell, and criminal contempt. He was also charged

---

between the contact nodes which can cause neuro-muscular incapacitation."
Brooks, 599 F.3d at 1026.

with violating conditions of his probationary status.  (C.D. 24:  SMF ¶ 28 citing Staton Aff. at 5, ¶ 26).

Mr. Parke had heart problems prior to October 23, 2008.  (C.D. 24:  SMF ¶ 29 citing Parke Depo. at 58, lines 5-7).  Mr. Parke has not received any medical care for injuries he claims were related to his arrest on October 23, 2008, since being discharged from St. James Hospital on October 31, 2008.  (C.D. 24:  SMF ¶ 30 citing Parke Depo. at 68, lines 10-13).

Sheriff Walsh, Sergeant Williams, Officer Honer, Officer Rauch, and Lieutenant Tracy were not present, nor did they participate in the arrest of Mr. Parke on October 23, 2008.  (C.D. 24:  SMF ¶ 31 citing Williams Aff. at 2, ¶ 4; Honer Aff. at 2, ¶ 4; Rauch Aff. at 2, ¶4; Tracy Aff. at 2, ¶ 4; Walsh Aff. at 2, ¶ 3).

Sheriff Walsh, Sergeant Williams, Detective Maloughney, Detective Staton, Officer T. Berger, Officer Honer, Officer Rauch, and Lieutenant Tracy did not deploy a taser at or on Mr. Parke on October 23, 2008.  (C.D. 24:  SMF ¶ 32 citing Williams Aff. at 2, ¶ 5;Maloughney Aff. at 3, ¶ 15; Staton Aff. at 5, ¶ 24; T. Berger Aff. at 3, ¶13; Honer Aff. at 2, ¶ 5; Rauch Aff. at 2, ¶ 5; Tracy Aff. at 2, ¶ 5; Walsh Aff. at 2, ¶ 3).

## V.  ANALYSIS

## A. Allegations in the First Amended Complaint[5]

Mr. Parke's First Amended Complaint alleges that he was tased to the point of unconsciousness and went into a coma as a result of Defendants' actions on October 23, 2008. He contends Defendants violated his Fourth Amendment and Eighth Amendment rights under the United States Constitution. (C.D. 14, p. 3).

Mr. Parke alleged that Defendants apprehended him on the false pretext of an outstanding warrant. He contends there was no outstanding warrant at the time of the "physical brutality" and "cruel tasing" of Mr. Parke. (C.D. 14, p. 3).

Mr. Parke indicates Defendants City of Butte, Silver-Bow Police Department and Sheriff John Welsh, individually, violated his rights by failing to oversee their staff, hiring unqualified people, and/or inadequately training their staff in the use of tasers.

Although Mr. Parke attached an affidavit to his Complaint regarding this incident, the affidavit is not based upon personal knowledge. Mr. Parke testified at his deposition that he has no recollection of anything that occurred from the time he walked out of the house on October 23, 2008 until he woke up in the hospital days later. (C.D. 38-1: Parke Depo., p. 22, lines 3-5).

---

[5]The First Amended Complaint supercedes Mr. Parke's original complaint (C.D. 5). <u>Rhodes v. Robinson</u>, 621 F.3d 1002, 1005 (2010).

## A. False Arrest

Mr. Parke's first claim is that he was "apprehended on a false pretext." This allegation is construed as a claim of false arrest. A claim under § 1983 for false arrest or false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizure. <u>Dubner v. City and County of San Francisco</u>, 266 F.3d 959, 964 (9th Cir. 2001). An arrest pursuant to a valid warrant is ordinarily consistent with the Fourth Amendment. <u>Baker v. McCollan</u>, 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979).

The undisputed evidence is that Mr. Parke was pursued and apprehended pursuant to a valid warrant for his arrest. The parties produced a copy of a bench warrant issued by State District Court Judge Kurt Krueger on September 12 or 17 (the date is illegible) in Case Nos. DC-03-73 and DC-03-127 which states,

> On September 11, 2008 the Defendant [Charles Parke] appeared on the State's Petition to Revoke Suspended Sentence alleging the Defendant has violated the terms and conditions of probation. The Court finds probable cause for the filing of such Petition. The Defendant denied the allegations and the Court released him pending bond. A condition of the bond was that the Defendant remain in MCDC for chemical dependency treatment. The Court being advised that the Defendant has left MCDC, accordingly,
> IT IS ORDERED that the Defendant, CHARLES BERNARD PARKE, shall be arrested should he be found within the jurisdiction of Montana. Thereafter, he shall be brought before this Court for further proceedings in this matter.

(C.D. 44-2, p. 4).

An arrest pursuant to a facially valid warrant does not establish a
constitutional violation. Baker v. McCollan, 443 U.S. 137, 144, 99 S.Ct. 2689,
2694, 61 L.Ed.2d433 (1979); Erdman v. Cochise County, 926 F.2d 877, 882 (9th
Cir. 1991). Officers are entitled to rely on an issuing judge's decision that probable
cause exists, and will be shielded from any liability relating to the arrest if they
relied on the judge's decision in good faith. See also Alvarado v. Bratton, 299 Fed.
Appx. 740, 742 (9th Cir. 2008)(recognizing Baker v. McCollan rule that a
detention of three days pursuant to a valid warrant does not and could not amount
to a deprivation of liberty without due process of law).

Mr. Parke argues the warrant could not have been valid on October 23, 2008
because it was recalled the next day. Defendants' explain that, "[o]n October 24,
2008, the Bench Warrant issued by Judge Krueger was 'recalled' because Parke
was admitted to St. James Hospital for observation." (C.D. 29, p. 4, ¶ 19). The
warrant record indicates the recall occurred on October 24, 2008 at 9:57 a.m., when
the warrant was "cleared." Defendant Maloughney then indicated that State
Probation and Parole issued a "Pick Up and Hold" Order for Parke when he was
discharged from the hospital on October 31, 2008. (C.D. 29, p. 4, ¶ 20).

Mr. Parke admits all arrest warrants were recalled on October 24, 2008. (C.D. 44, p. 2). But he explains that Probation and Parole made a pick up and hold request for him to Judge Krueger on October 24, 2008 and a new warrant was issued for his arrest on October 27, 2008. He argues that if Defendants had a legal warrant for him on October 23, 2008, then they would not have needed to get a new warrant. (C.D. 44, p. 2).

It is not entirely clear why the warrant was recalled on the October 24, 2008. Regardless, the undisputed testimony is that a valid warrant existed for Mr. Parke on October 23, 2008. There is a copy of that warrant in the record and that warrant was not recalled until after Mr. Parke was in the hospital. The critical moment in this case is the initial approach and pursuit of Mr. Parke. After he was apprehended, clearly the officers had probable cause to arrest him based upon the drugs found on his person for which he was convicted in this court. See Criminal Action No. 08-CR-00024-CCL.

At the moment the officers initiated the stop and pursuit of Mr. Parke there was a valid warrant. There is no evidence in the record to support a finding that the warrant was invalid. Therefore, all claims of false arrest fail as a matter of law and will be recommended for dismissal.

## B.  Excessive Use of Force

Mr. Parke's allegations regarding Defendants' use of tasers on him on October 23, 2008 have been construed as claims of excessive use of force.  The undisputed facts are that only Officers Heard and Chris Berger utilized their tasers on October 23, 2008, therefore, any claims of excessive use of force against any other Defendant fails as a matter of law.

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure and while detained post-arrest but pre-arraignment is analyzed under the Fourth Amendment reasonableness standard, rather than the Eighth Amendment.  See Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(claims of excessive force to effect arrest analyzed under Fourth Amendment, claims of excessive force by convicted prisoners analyzed under the Eighth Amendment).  As Mr. Parke was not a convicted prisoner at the time of this incident, the Eighth Amendment does not apply.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Graham, 490 U.S. at

396 (citations omitted).

"The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham</u>, 490 U.S. at 397 (citation omitted). Reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. 397. The proper application of the reasonableness standard requires careful consideration of the specific facts and circumstances of each individual case, including, "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396.

While these are the most common considerations, they are not "a magical on/off switch that triggers rigid preconditions" to determine whether an officer's conduct constituted excessive force. <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769, 1777, 167 L.Ed.2d 686 (2007). Consequently, courts consider other factors, such

as "the quantum of force used," as well as "the availability of alternative methods of capturing or subduing a suspect." Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th Cir. 2007); Chew v. Gates, 27 F.3d 1432, 1441 n. 5 (9th Cir. 1994).

Cases alleging use of excessive force in violation of the Fourth Amendment "nearly always require[ ] a jury to sift through disputed factual contentions, and to draw inferences therefrom," and, therefore "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003)(citing Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

Mr. Parke stated in his deposition that he has no recollection of the events at issue aside from walking out of his house and waking up in the hospital. (C.D. 38-1: Parke Depo., p. 22, lines 3-5). He provides no other evidence regarding the events at issue. Accordingly, the undisputed facts are those presented by Defendants. Under those facts, when the defendant officers attempted to execute the arrest warrant Mr. Parke ran from them and the officers pursued. During the chase, both Sergeant Heard and Officer Chris Berger deployed their tasers in the dart-mode at Mr. Parke. Mr. Parke continued to run from the officers. Officer Berger was eventually able to pull Mr. Parke to the ground. Mr. Parke continued

to physically resist the officers' attempts to place handcuffs on him. During the struggle to restrain Mr. Parke, Officer Chris Berger deployed his taser in the drive-stun mode. The officers were then able to gain control over Mr. Parke and place him in handcuffs.

Although not listed in the undisputed facts, the incident report by Officer Maloughy indicates that during the course of the search of Mr. Parke's person after he was handcuffed, "Charles was not responding to any questions and was having a hard time breathing. Heard summonsed medical to our location." (C.D. 38-3, p. 5). Officer Heard testified by affidavit that after Mr. Parke was handcuffed, he was placed in an upright, seated position but due to his lethargic condition and his refusal to answer questions, a medical unit was called. (C.D. 27–Heard Aff., p. 4, ¶¶ 19-20). This appears to be the first indication that Mr. Parke was having medical issues.

Mr. Parke apparently had medical issues following this incident but there is no evidence connecting his extended stay in the hospital with this incident. That is, there is nothing to indicate that the hospital stay was caused by the tasing. Even if it was, it cannot be said that the tasing was excessive.

There is significant flux in the case law regarding the level of force utilized

in the deployment of tasers.  It was not decided until November 30, 2010 that the use of the taser in the dart mode constituted "an immediate, significant level of force[.]"  Bryan, 630 F.3d at 826.  It is still not clear what level of force is utilized in the deployment of a taser in the drive-stun mode because the two most recent drive-stun taser cases are both pending on rehearing en banc.  See Brooks v. City of Seattle, 599 F.3d 1018 (9th Cir.2010), rehr'g en banc granted by 623 F.3d 911 (9th Cir. 2010); Mattos v. Agarano, 590 F.3d 1082 (9th Cir.2010), rehr'g en banc granted by 625 F.3d 1132 (9th Cir. 2010).

Even assuming the use of the taser in either the drive-stun mode or in the dart-mode constituted an immediate use of force, the three taser deployments in this case were justified.  Mr. Parke was wanted on a probation violation, the officers were attempting to execute a warrant for his arrest, Mr. Parke ran from the officers into a busy street and tried to elude capture.  Both Officers Heard and Berger testified they deployed their tasers because Mr. Parke was a known fleeing felon who was wanted on an outstanding felony arrest warrant and they believed it was necessary to take him into custody as soon as possible.  They both knew Mr. Parke had a long criminal history and a long history of illegal drug use, abuse, and sale.  They also testified that they were attempting to stop Mr. Parke from fleeing

on busy streets and that because of the volume of traffic, Mr. Parke was creating a significant danger to the officers, himself, and passing traffic.  (C.D. 27: Heard Aff., p. 4, ¶¶ 21-22; C.D. 28: C.Berger Aff., p. 4, ¶¶ 19-20).  Mr. Parke does not dispute these facts.

In balancing the nature and quality of the force utilized with the important governmental interests at stake, there was no use of excessive force in violation of the Fourth Amendment.

Even if there was a Fourth Amendment violation, the officers would be entitled to qualified immunity.  Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  As set forth above, the state of the law regarding the use of tasers is in flux.  The Bryan case determined that it was not clearly established until 2010 that the use of the dart-mode taser constituted "an intermediate, significant level of force."  Given the pending en banc hearings in the cases regarding the drive-stun mode tasers, it cannot be said that it was clearly established in 2008 that the use of either taser was a violation of Mr. Parke's constitutional rights.

The officers were justified in the force utilized in this situation.

Accordingly, summary judgment should be granted to all defendants.

## C.  Failure to Train, Supervise, and/or Hiring Unqualified Officers

Mr. Parke seeks to hold Defendants City of Butte, Silver-Bow Police

Department, and Sheriff John Welsh liable for failing to oversee their staff, hiring

unqualified people, and/or inadequately training their staff in the use of tasers.

Because the individual officers did not violate Mr. Parke's constitutional rights, any

claims of failure to train, supervise, or inadequate hiring fail as a matter of law.

City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89

L.Ed.2d 806 (1986) (deficient policy cannot support Monell liability when there

has been no constitutional harm); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d

950, 957 ("Because there is no constitutional violation, there can be no municipal

liability.").

## VI.  CONCLUSION

Mr. Parke's claims against Defendants and the evidence he presented in

support of those claims are insufficient to survive summary judgment.  Defendants

have demonstrated there is no genuine dispute as to any material fact and they are

entitled to judgment as a matter of law.  Defendants' Motions for Summary

Judgment should therefore be granted.

## A.    Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:

> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous."  Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445).  For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact.  Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).  Mr. Parke has, as a matter of law, failed to

produce sufficient evidence to prove his claims.  As such, the Court should certify that any appeal of this matter would not be taken in good faith.

**B. Address Changes**

At all times during the pendency of this action, Mr. Parke SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based on the foregoing, the Court issues the following:

**ORDER**

1.  Mr. Parke's Motion for Discovery (C.D. 41) is denied.

2.  Defendants' Motion to Strike (C.D. 46) is denied.

Further, the Court issues the following:

**RECOMMENDATIONS**

1.  Defendants' Motions for Summary Judgment (C.D. 22, 35) should be granted.

2.  The Clerk of Court should be directed to enter judgment in favor of Defendant and close this case.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Mr. Parke failed to produce sufficient evidence to support his claims and as such no reasonable person could suppose that an appeal would have merit.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this <u>1st</u> day of August, 2011.


/s/ Keith Strong
Keith Strong
United States Magistrate Judge